**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VERNA GAIL GRIFFIN,              )    NO. CV 15-535-E
                                 )
            Plaintiff,           )
                                 )
    v.                           )    **MEMORANDUM OPINION**
                                 )
CAROLYN W. COLVIN, ACTING        )    **AND ORDER OF REMAND**
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
            Defendant.           )
_____ )


        Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

judgment are denied, and this matter is remanded for further

administrative action consistent with this Opinion.


                        **PROCEEDINGS**


        Plaintiff filed a complaint on January 23, 2015, seeking review

of the Commissioner's denial of benefits.  The parties consented to

proceed before a United States Magistrate Judge on March 19, 2015.

Plaintiff filed a motion for summary judgment on July 15, 2015.

1   Defendant filed a motion for summary judgment on September 14, 2015.

2   The Court has taken the motions under submission without oral

3   argument.  See L.R. 7-15; "Order," filed January 28, 2015.

4

5                            **BACKGROUND**

6

7        Plaintiff alleges disability since August 11, 2010, based on

8   lumbar degenerative disc disease and a back injury (Administrative

9   Record ("A.R.") 233, 305).  Plaintiff worked as a hotel reservation

10  clerk until she suffered a work-related injury to her back on June 25,

11  2007 (A.R. 40, 42-43, 48, 233-34, 245, 282, 334, 336-37, 350-58, 464-

12  72).

13

14       The Administrative Law Judge ("ALJ") found Plaintiff suffers from

15  a severe right knee disorder with pain, and severe degenerative disc

16  disease with low back pain, but retains the residual functional

17  capacity to perform a limited range of sedentary work (A.R. 16-19).[1]

18  Specifically, the ALJ found that Plaintiff can perform sedentary work

19  except:

20  _____

21          [1]     Sedentary work involves lifting no more than
22                  10 pounds at a time and occasionally lifting
                    or carrying articles like docket files,
23                  ledgers, and small tools.  Although a
                    sedentary job is defined as one which
24                  involves sitting, a certain amount of walking
                    and standing is often necessary in carrying
25                  out job duties.  Jobs are sedentary if
                    walking and standing are required
26                  occasionally and other sedentary criteria are
                    met.
27

28  See 20 C.F.R. § 404.1567(a).

1    she can stand and walk for up to two of eight hours,
2    cumulatively, but requires use of a cane for extended
3    periods of ambulation; can sit for no more than six of eight
4    hours, cumulatively, but must have an opportunity to
5    alternate between seated and standing positions at least
6    every 30 minutes; has unlimited capacity for pushing and
7    pulling, except weight restrictions for lifting and
8    carrying; can no more than occasionally climb ramps or
9    stairs, balance, or stoop; can never crawl, kneel, crouch or
10   climb ladders or ropes; and cannot be exposed to dangerous
11   machines or unprotected heights.

12

13   (A.R. 17).

14

15       In finding Plaintiff retains this capacity, the ALJ purportedly
16   gave "substantial evidentiary weight" to opinions from Agreed Medical
17   Examiner ("AME") Dr. Steven Silbart, the consultative examiners, and
18   the State agency review physicians.  See A.R. 18-19.  The ALJ rejected
19   the contrary opinion of Plaintiff's treating physician, Dr. Philip
20   Conwisar (A.R. 1388-95).  The ALJ also rejected as not credible
21   Plaintiff's contrary testimony.  See A.R. 17, 19.

22

23       The ALJ found that Plaintiff's residual functional capacity
24   permitted her to perform her past relevant work as a reservation clerk
25   as actually and generally performed (A.R. 19-20 (relying on vocational
26   ///
27   ///
28   ///

1    expert testimony at A.R. 56-61)).[2]   Accordingly, the ALJ found

2    Plaintiff not disabled (A.R. 20).   The Appeals Council denied review

3    (A.R. 1-3).

4

5                          **STANDARD OF REVIEW**

6

7         Under 42 U.S.C. section 405(g), this Court reviews the

8    Administration's decision to determine if: (1) the Administration's

9    findings are supported by substantial evidence; and (2) the

10   Administration used correct legal standards.   See Carmickle v.

11   Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

12   499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner,

13   682 F.3d 1157, 1161 (9th Cir. 2012).   Substantial evidence is "such

14   relevant evidence as a reasonable mind might accept as adequate to

15   support a conclusion."   Richardson v. Perales, 402 U.S. 389, 401

16   (1971) (citation and quotations omitted); see also Widmark v.

17   Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

18

19        If the evidence can support either outcome, the court may

20        not substitute its judgment for that of the ALJ.   But the

21        Commissioner's decision cannot be affirmed simply by

22        isolating a specific quantum of supporting evidence.

23        Rather, a court must consider the record as a whole,

24

25           [2]    Plaintiff reported that her job as a reservationist
26   required her to walk 1.5 hours, stand 0.5 hours, and sit six
     hours in an eight hour day (A.R. 245).   She lifted less than 10
27   pounds and was not required to climb, stoop, kneel, crouch, or
     crawl (A.R. 245).   Nor did she use any machines, tools, or
28   equipment (A.R. 245).

                                    4

1       weighing both evidence that supports and evidence that

2       detracts from the [administrative] conclusion.

3

4 Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

5 quotations omitted).

6

7                               **DISCUSSION**

8

9     Plaintiff contends, inter alia, that the ALJ materially erred in:

10 (1) the evaluation of Dr. Conwisar's opinion; and (2) the evaluation

11 of Plaintiff's credibility.  For the reasons discussed herein, the

12 Court agrees.  Remand for further administrative proceedings is

13 appropriate.

14

15 **I.**    **Summary of the Medical Record**

16

17     MRI studies from the time of Plaintiff's work injury showed a

18 five millimeter disc bulge at L5-S1, and early disc desiccation at L4-

19 L5 with a three millimeter disc bulge, which was causing pain

20 radiating down Plaintiff's legs (A.R. 48, 351, 360-61; see also A.R.

21 605-06 (follow up MRI from May 13, 2009, also showing mild spondylosis

22 throughout the lumbar spine and disc dessication at L5-S1); A.R. 700-

23 01 (post-operative MRI from March 29, 2011, showing mild arthritis at

24 L4-L5, small posterior annular fissure at L5-S1, and mild loss of disc

25 height at L5-S1); A.R. 868-70 (MRI from March 13, 2012 showing a 1-2

26 millimeter disc bulge at L4-L5 with moderate-to-severe facet

27 arthropathy, mild-to-moderate loss of disc height and a 1-2 millimeter

28 bulge at L5-S1)).

1    Plaintiff's worker's compensation orthopedic surgeon, Dr.
2  Conwisar, treated Plaintiff for her back injury from April 2008
3  through at least December 2012 (A.R. 43, 421-74, 477-79, 483-85, 572-
4  73, 586, 654-79, 687-88, 692-93, 702-03, 719, 723-25, 744-45, 776-79,
5  787-95, 814-15, 871-1088, 1355-86).   Dr. Conwisar prescribed narcotic
6  pain relievers, in coordination with pain management specialists, and
7  requested authorization for three lumbar epidural cortisone injections
8  and a short course of physical therapy (A.R. 460-72, 661-63, 1090-
9  1119, 1121-23, 1132-74, 1201-06, 1210-25).   Plaintiff was given a
10 total of three epidural injections for her pain in November and
11 December of 2009, "without significant improvement" (A.R. 48, 559-71,
12 574-85, 589-99, 660, 780-82, 785-86).

13

14   Orthopedic surgeon, Dr. Edwin Haronian, evaluated Plaintiff on
15 May 20, 2010, and stated that additional lumbar injections would be
16 "out of the question" because Plaintiff's "pain recurred" after the
17 previous injections (A.R. 618).   Dr. Haronian, like Agreed Medical
18 Examiner Dr. Silbart (A.R. 763-75), recommended decompression surgery
19 at the L5-S1 level (for Plaintiff's leg pain), and possibly a lumbar
20 arthrodesis (for her back pain) (A.R. 618-23).   On August 6, 2010, Dr.
21 Haronian performed the lumbar decompression surgery
22 ("hemilaminectomies" at L5 and S1), which reportedly helped resolve
23 Plaintiff's leg pain, but not her back pain (A.R. 48, 624-28, 637-39).
24 Dr. Haronian requested authorization for physical therapy (A.R. 625).
25 By February 1, 2011, Plaintiff had completed nine post-operative
26 physical therapy sessions (A.R. 654).   Dr. Conwisar ordered additional
27 ///
28 ///

physical therapy to occur after February 1, 2011 (A.R. 654).[3]

Plaintiff's back did not improve after surgery. See A.R. 48-49 (medical expert calling it a "failed surgery"). As the medical expert stated, "it's a frequent scenario, the more [the doctors] did the worse she got" (A.R. 48). As of January 24, 2012, Dr. Conwisar stated that Plaintiff's pain was more severe and that she would need an updated MRI and spine surgical re-evaluation (A.R. 1004-05; see also A.R. 1384 (recommending same in May of 2012)). On evaluation in 2012, Dr. Haronian reportedly recommended pool physical therapy (A.R. 1356). In May and July of 2012, Plaintiff underwent additional epidural steroid injections for her pain (A.R. 1192-99, 1207-09). She initially reported "significant relief in her pain which has been persistent so far" (A.R. 1211). However, Dr. Conwisar indicated as of September 25, 2012, that the injections did not provide lasting

_____

[3]     On February 2, 2011, AME Dr. Silbart found that Plaintiff continued to be "validly temporarily totally disabled" (A.R. 713). On May 19, 2011, Dr. Silbart found that Plaintiff then was "Permanent and Stationary," and opined that Plaintiff was not capable of performing her "usual and customary work duties" (A.R. 682-83). On August 12, 2011, Dr. Silbart opined that Plaintiff's current lifting capacity was between 25 and 28 pounds, and that she would be precluded from "prolonged sitting," but he did not assign a specific sitting time limit (A.R. 689-90). In his most recent examination on February 11, 2013, Dr. Silbart did not express an opinion as to Plaintiff's limitations, but he noted that she presented with "increased lumbar symptomatology" (A.R. 1412). Consistent with her increased symptomatology, Dr. Silbart assigned Plaintiff a "35% Whole Person Impairment" score. See A.R. 1413; compare A.R. 682 (Dr. Silbart assigning a 27 percent impairment on May 19, 2011, when he opined that Plaintiff was incapable of performing her ordinary work duties); A.R. 690 (Dr. Silbart also assigning a 27 percent impairment on August 12, 2011, when he opined that Plaintiff could lift between 25 and 28 pounds and would be precluded from prolonged sitting).

significant improvement (A.R. 1368).  "She continues to have severe low back pain radiating predominantly to the right lower extremity" (A.R. 1368).

Dr. Conwisar completed a Residual Functional Capacity Assessment form dated February 28, 2013 (A.R. 1388-95).  Dr. Conwisar indicated that Plaintiff could lift and carry less than 10 pounds, would require a hand-held assistive device for ambulation, and must periodically alternate between sitting and standing (A.R. 1389).  Dr. Conwisar did not indicate how long he thought Plaintiff could stand and/or walk or sit in a workday (A.R. 1389).  He stated Plaintiff then was in a wheelchair due to alleged problems with her right knee, unrelated to her back injury (A.R. 1389).[4]  Dr. Conwisar indicated that Plaintiff should never climb, balance, stoop, kneel, crouch, or crawl (A.R. 1390).

As the medical expert stated, there was some evidence of right knee arthritis (A.R. 48; see also A.R. 844-57, 1227-31, 1255-1353 (medical records reporting right knee pain and arthritis and related treatment)).  Plaintiff underwent arthroscopic surgery in November of 2012, testified that her knee is "bone on bone" and also testified that Dr. Minkowitz at Kaiser said she is a candidate for knee replacement (A.R. 51-52; see also A.R. 1346-48 (medical record from arthroscopic surgery)).

///

---

[4]     At her February 11, 2013 Agreed Medical Examination, Plaintiff presented with both a cane and a wheelchair but reportedly "can walk without the use of either."  See A.R. 1410.

The medical expert opined that Plaintiff could perform light work limited to standing two hours in an eight hour workday, and sitting approximately six hours in an eight hour workday, with periodic alternation between sitting and standing (A.R. 49). The expert opined that Plaintiff could never climb ladders, ropes, or scaffolding, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (A.R. 49). The expert found no manipulative or environmental limitations (A.R. 49).[5]

## II.   The ALJ's Stated Reasons For Rejecting Dr. Conwisar's Opinion are Insufficient.

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . . This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physician opinions). Even where the treating physician's

///

///

_____

[5]   On October 23, 2011, a consultative orthopedic examiner found lesser limitations than those found by the medical expert. The examiner opined that Plaintiff would be limited to light work, with standing and walking six hours in an eight hour day, sitting six hours, and only occasional climbing, stooping, kneeling, and crouching (A.R. 835-40; see also A.R. 541-46 (May 8, 2009 consultative orthopedic examination also finding lesser limits than the medical expert found)).

1   opinions are contradicted,[6] "if the ALJ wishes to disregard the

2   opinion[s] of the treating physician he . . . must make findings

3   setting forth specific, legitimate reasons for doing so that are based

4   on substantial evidence in the record."  Winans v. Bowen, 853 F.2d

5   643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted);

6   see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the

7   treating physician's opinion, but only by setting forth specific,

8   legitimate reasons for doing so, and this decision must itself be

9   based on substantial evidence") (citation and quotations omitted).

10

11       In the present case, the ALJ rejected Dr. Conwisar's opinion,

12   stating the following:

13

14       Throughout 2012 and in early 2013, when not noting a short-

15       term disability, Dr. Conwisar repeatedly notes that the

16       claimant's long-term (permanent and stationary)

17       Work/Disability Status is as previously determined by the

18       Agreed Medical Examiner [A.R. 1354-86 (Dr. Conwisar's

19       reports for Plaintiff's worker's compensation claim)].  That

20       is, Dr. Conwisar agrees with the opinion of Dr. Silbart that

21       the claimant's long-term functioning is limited to lifting

22       25 to 28 pounds with no prolonged sitting.

23   ///

24   ///

25

26   _____

27       [6]    Rejection of an uncontradicted opinion of a treating
     physician requires a statement of "clear and convincing" reasons.
     Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v.
28   Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

1    In spite of this, on February 28, 2013 Dr. Conwisar issued a
2    residual functional capacity form indicating that the
3    claimant is, essentially, completely disabled [A.R. 1388-
4    95].  However, it explicitly attributes the claimant's
5    necessary wheelchair use to the claimant's knee pain, which
6    he does not treat, and he explicitly anticipates an
7    arthroscopic surgery on the knee, which, is apparently based
8    on the claimant's statements.  There is no evidence Dr.
9    Conwisar actually examined the claimant's knee or viewed any
10   medical images of the knee.  As such, Dr. Conwisar is not in
11   a qualified position to address the knee impairments. . . .
12   [I]n the absence of any significant knee treatment record or
13   medical image I am unable to accept Dr. Conwisar's
14   recommendation that the claimant is <u>completely</u> disabled by
15   knee pain.

16

17   (A.R. 18-19).

18

19       An ALJ's material mischaracterization of the record can warrant
20   remand.  <u>See, e.g.</u>, <u>Regennitter v. Commissioner of Social Sec. Admin.</u>,
21   166 F.3d 1294, 1297 (9th Cir. 1999).  Here, the ALJ materially
22   mischaracterized the record in evaluating Dr. Conwisar's opinion.
23   First, while Dr. Conwisar's notes reference Plaintiff's "Permanent and
24   Stationary" status and refer to Plaintiff's work status with "per AME"
25   in December of 2012 (<u>see, e.g.</u>, 1356, 1358, 1360), Dr. Conwisar's
26   notes also indicate that Plaintiff was scheduled to have a re-
27   evaluation by the Agreed Medical Examiner that had not happened as of
28   December 4, 2012 (A.R. 1355).  Prior to that time, Dr. Conwisar either

1  indicated a need for an "AME" re-evaluation regarding Plaintiff's work
2  status and treatment (see, e.g., A.R. 1363-64, 1367, 1369, 1371,
3  1373), or referred to the prior "Permanent and Stationary" finding
4  (see, e.g., 1376-77, 1382, 1384).  There is no indication anywhere in
5  the notes that Dr. Conwisar considered and agreed with Dr. Silbart's
6  snapshot from August of 2011 suggesting that Plaintiff could lift
7  between 25 and 28 pounds.[7]  To the extent the ALJ attempted to rely on
8  any alleged inconsistency between Dr. Conwisar's treatment notes
9  (which utilize worker's compensation terminology), and Dr. Conwisar's
10 opinion regarding Plaintiff's residual functional capacity, this is
11 not a specific and legitimate reason for rejecting Dr. Conwisar's
12 opinion in total.  Significantly, in finding Plaintiff capable of only
13 sedentary work, the ALJ arguably agreed with Dr. Conwisar's opinion
14 that Plaintiff could only lift and carry less than 10 pounds.  Compare
15 A.R. 17 with A.R. 1389.

16

17      Second, contrary to the ALJ's assertion, Dr. Conwisar's residual
18 functional capacity opinion does not suggest "complete" disability due
19 to knee pain.  As summarized above, Dr. Conwisar did state that
20 Plaintiff then was in a wheelchair because of her right knee problem
21 (A.R. 1389).  However, Dr. Conwisar indicated that Plaintiff would
22 have to alternate between sitting and standing to relieve her pain,
23 and would have to use a hand-held assistive device for ambulation –
24 suggesting that he was not basing all the limitations on Plaintiff's
25 current knee issue (A.R. 1389).  To the contrary, Dr. Conwisar

26
_____

27      [7]   AME Silbart himself later gave a more restrictive
   assessment, apparently based in part on Plaintiff's "increased
28 lumbar symptomatology."  See footnote 3, supra.

expressly indicated that his findings were based on facts unrelated to Plaintiff's knee issues, including the following: (1) Plaintiff had undergone a lumbar microdiscectomy at L5-S1 and had two lumbar epidural injections (A.R. 1389); (2) a MRI from March of 2012 showed moderate to severe facet arthropathy at L4-L5, and left hemilaminectomy deficit at L5-S1 (A.R. 1390); and (3) Plaintiff was having more severe pain in the lumbar spine, radiating predominantly to the right lower extremity, and that she had not obtained "significant improvement" from treatment (A.R. 1393). Thus, the ALJ could not properly reject Dr. Conwisar's opinion based on assertion that Dr. Conwisar predicated his opinion only on Plaintiff's current knee problem. Manifestly, he did not.

As discussed above, Dr. Conwisar did not indicate how long Plaintiff could stand and/or walk or sit in a regular workday (A.R. 1389). The ALJ should have further developed the record on this point. See generally Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) ("[T]he ALJ has a special duty to fully and fairly develop the record to assure the claimant's interests are considered. This duty exists even when the claimant is represented by counsel.") (internal citation omitted); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (citation omitted). As the ALJ acknowledged, Dr. Silbart opined that Plaintiff is precluded from prolonged sitting (A.R. 18, 690). Both Dr. Conwisar and the medical expert opined (and the ALJ agreed) that Plaintiff would have to alternate between sitting and standing periodically to

relieve her pain (A.R. 17, 49, 1389).  Without the benefit of any
examination, the non-examining medical expert opined that Plaintiff
would be capable of sitting six hours and standing and/or walking two
hours in a workday (A.R. 49).[8]  The only examining doctors who opined
concerning these abilities were the consultative examiners, whose
opinions the ALJ did <u>not</u> adopt for these abilities and whose opinions
predated Dr. Conwisar's opinion by more than a year.  <u>See</u> A.R. 18,
541-46, 835-40.

## III. **The ALJ's Credibility Findings Are Insufficient.**

Where, as here, an ALJ finds that a claimant's medically
determinable impairments reasonably could be expected to cause the
symptoms alleged (A.R. 17), the ALJ may not discount the claimant's
testimony regarding the severity of the symptoms without making
"specific, cogent" findings, supported in the record, to justify
discounting such testimony.  <u>See</u> <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234
(9th Cir. 2010); <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995);
<u>but see</u> <u>Smolen v. Chater</u>, 80 F.3d at 1282-84 (indicating that ALJ must

---

[8]     "The opinion of a nonexamining physician cannot by
itself constitute substantial evidence that justifies the
rejection of the opinion of either an examining physician <u>or</u> a
treating physician."  <u>Lester v. Chater</u>, 81 F.3d at 831 (emphasis
original); <u>see also</u> <u>Orn v. Astrue</u>, 495 F.3d at 632 ("When [a
nontreating] physician relies on the same clinical findings as a
treating physician, but differs only in his or her conclusions,
the conclusions of the [nontreating] physician are not
'substantial evidence.'"); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506
n.4 (9th Cir. 1990) ("The nonexamining physicians' conclusion,
with nothing more, does not constitute substantial evidence,
particularly in view of the conflicting observations, opinions,
and conclusions of an examining physician").

1  state "specific, clear and convincing" reasons to reject a claimant's

2  testimony where there is no evidence of malingering).[9]  Generalized,

3  conclusory findings do not suffice.  See Moisa v. Barnhart, 367 F.3d

4  882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be

5  sufficiently specific to allow a reviewing court to conclude the ALJ

6  rejected the claimant's testimony on permissible grounds and did not

7  arbitrarily discredit the claimant's testimony") (internal citations

8  and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208

9  (9th Cir. 2001) (the ALJ must "specifically identify the testimony

10 [the ALJ] finds not to be credible and must explain what evidence

11 undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The

12 ALJ must state specifically which symptom testimony is not credible

13 and what facts in the record lead to that conclusion."); see also

14 Social Security Ruling 96-7p.[10]  A lack of objective medical evidence

15 to support the alleged severity of a claimant's symptomatology "can be

16 a factor" in rejecting a claimant's credibility, but cannot "form the

17 sole basis."  See Burch v. Barnhart, 400 F.3d 676, 681 (2005).

18

19  [9]     In the absence of an ALJ's reliance on evidence of

20 "malingering," most recent Ninth Circuit cases have applied the
    "clear and convincing" standard.  See, e.g., Burrell v. Colvin,
21 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v.
    Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v.
22 Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v.
    Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); Chaudhry v.
23 Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v.
    Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); see also Ballard v.
24 Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000)
    (collecting earlier cases).  In the present case, the ALJ's
25 findings are insufficient under either standard, so the
26 distinction between the two standards (if any) is academic.

27  [10]    Social security rulings are binding on the
    Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1
28 (9th Cir. 1990).

15

1    Plaintiff testified that she was taking Norco for her pain and

2    Zanaflex for muscle spasms (A.R. 44-45). She said that, with

3    medication, her pain is approximately a seven on a scale of one to 10

4    (A.R. 55). Further, Plaintiff said that her medication makes her

5    "woozy" and sleepy and prevents her from focusing or concentrating

6    (A.R. 50-51). Plaintiff said she could not perform her job as a

7    reservation clerk due to the side effects of her medication (A.R. 51).

8

9    Plaintiff also testified that she does not drive due to her pain

10   medications and would have difficulty using steps to ride public

11   transportation (A.R. 39). Plaintiff claimed that she needs bathing

12   assistance and some dressing assistance (A.R. 45). She said she could

13   prepare simple meals that do not require standing too long (A.R. 45).

14   Reportedly, Plaintiff then was taking two or three naps or rest breaks

15   per day for an hour or two each (A.R. 54). Plaintiff said she could

16   shop only with the assistance of electric chairs because she has

17   problems walking more than 100 yards due to lower back and tailbone

18   pain (A.R. 46, 54). Plaintiff said she could barely sit for 15

19   minutes (A.R. 54).[11]

20   ────────────────

21       [11]   Plaintiff's written reports reflect worsening pain over
     time, consistent with the medical source observations. In an
22   Exertion Questionnaire dated September 29, 2011, Plaintiff
     reported that she lives with her parents and does no housekeeping
23   (A.R. 249-51). She stated that she can cook but must take many
     breaks to sit, can sit no longer than 20 minutes and can stand no
24   longer than 15 minutes due to her pain (A.R. 249, 251). She
     reported that she could walk 15 to 20 yards before she is in "a
25   lot" of pain, and that she uses a wheelchair when she goes
     somewhere that requires her to walk a long distance (A.R. 249,
26   251). She reported that she uses a cane daily (A.R. 251).
     Plaintiff stated that she could drive a car five to 10 miles to
27   her doctor appointments every four to six weeks (A.R. 250). She
28                                                    (continued...)

The ALJ rejected Plaintiff's pain testimony: (1) as supposedly contradicted by "[e]xamination results"; and (2) for "failure to pursue all available pain treatment modalities" (i.e., more epidural injections, using a TENS unit, or "chiropractic adjustment") (A.R. 19).

---

[11](...continued)
stated that she tries to get at least a 30 minute nap during the day (A.R. 251). Plaintiff then was taking Flexeril (a muscle relaxant) and Lortab (Vicodin) for her pain (A.R. 251).

In a Disability Report - Appeal form dated January 18, 2012, Plaintiff reported that her pain had increased and continues to radiate down both legs, and that she has right hip pain which makes it difficult for her to sit or stand too long (A.R. 252-56). She reported spending more time at home due to limitations from her pain (A.R. 252, 256). By then, Plaintiff indicated that she was not driving anymore (A.R. 255).

In a Disability Report - Appeal form dated June 27, 2012, Plaintiff reported that because of back spasm and tailbone pain, she cannot walk farther than 50 yards, and that her pain is worse on her right side, which requires her to sit and lean on her left side (A.R. 262-68). She reportedly was unable to go anywhere alone without assistance (A.R. 262). She reported that she could not sit for "any length of time" (A.R. 266).

In a "Written Questions to Claimant (Adult)" form dated January 16, 2013, Plaintiff reported that her medications had rendered her unable to drive or concentrate (A.R. 281-88; see also A.R. 294-301 (follow up form dated April 26, 2013, reporting similar answers)). She indicated that she could drive to her attorney's office but "in general" does not drive (A.R. 282). Plaintiff thought she could lift less than 10 pounds, stand and walk less than two hours in an eight hour day, and sit less than six hours in an eight hour day (A.R. 284-85). She indicated that she uses a cane and cannot sit or stand longer than 15-20 minutes, and cannot bend (A.R. 285). She reported that her pain is always present and is getting worse (A.R. 286). She also reported that her medication does not allow her to concentrate, and, if she fails to take her medication, her pain prevents her from concentrating (A.R. 287). Plaintiff indicated that when she is hurting, she can only lie down or recline (A.R. 287). She reportedly was taking Norco, Neurontin, and Zanaflex (A.R. 292).

1    With regard to the first stated reason, a failure of the medical

2   record to corroborate fully a claimant's subjective symptom testimony

3   is not, by itself, a legally sufficient basis for rejecting such

4   testimony.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.

5   2001); Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988); Cotton

6   v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Burch v.

7   Barnhart, 400 F.3d at 681.  The ALJ's general reference to

8   "[e]xamination results" supposedly contradicting Plaintiff's

9   statements lacks the requisite specificity.  To the extent the ALJ did

10  cite specifics, the specifics fail adequately to support the ALJ's

11  conclusion.  The early examination record from May of 2009 cited by

12  the ALJ may have shown normal posture, gait, and ambulation at that

13  time (A.R. 543), but other, more recent examinations reflect: (1) mild

14  antalgic gait, referable to the right, with the use of a cane (A.R.

15  767 (March 24, 2010 exam); (2) a gait with "diminished cadence and

16  velocity" (A.R. 836 (October 23, 2011 exam)); and (3) moderately

17  antalgic gait favoring the left with the use of a cane (A.R. 710

18  (February 2, 2011 exam)).

19

20    With regard to the second stated reason, a limited course of

21  treatment sometimes can justify the rejection of a claimant's

22  testimony, at least where the testimony concerns physical problems.

23  See, e.g., Burch v. Barnhart, 400 F.3d at 681 (lack of consistent

24  treatment such as where there was a three to four month gap in

25  treatment properly considered in discrediting claimant's back pain

26  testimony); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in

27  assessing the credibility of a claimant's pain testimony, the

28  Administration properly may consider the claimant's failure to request

18

1  treatment and failure to follow treatment advice) (citing Bunnell v.

2  Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v.

3  Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility

4  factors in assessing pain testimony include limited treatment and

5  minimal use of medications); see also Johnson v. Shalala, 60 F.3d

6  1428, 1434 (9th Cir. 1995) (absence of treatment for back pain during

7  half of the alleged disability period, and evidence of only

8  "conservative treatment" when the claimant finally sought treatment,

9  sufficient to discount claimant's testimony).

10

11      Here, however, no doctor opined that Plaintiff should receive

12  additional epidural injections for her pain; her previous injections

13  had failed to provide enduring relief.  Nor did any doctor opine that

14  Plaintiff should use a TENS unit or seek chiropractic adjustment for

15  her condition.  To the contrary, it appears Plaintiff followed all

16  treatment suggestions, including physical therapy, narcotic pain

17  medication, multiple epidural injections, and surgery.  The ALJ was

18  not qualified to determine on his own that Plaintiff had any available

19  additional or different treatment options.  An ALJ may not rely on his

20  or her own lay opinion regarding medical matters.  See Day v.

21  Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ who is not

22  qualified as a medical expert cannot make "his own exploration and

23  assessment as to [the] claimant's physical condition"); see also Rohan

24  v. Chater, 98 F.3d 966, 970-71 (7th Cir. 1996) (ALJ may not rely on

25  his or her own lay opinion regarding medical matters); Ferguson v.

26  Schweiker, 765 F.2d 31, 37 (3d Cir. 1995) (same); cf. Rudder v.

27  Colvin, 2014 WL 3773565, at *12 (N.D. Ill. July 30, 2014) ("The ALJ

28  may be correct that disabling limitations from multiple sclerosis

would result in more frequent treatment or need for medication. However, the ALJ must include evidence to support such a conclusion in his opinion because he is not qualified, on his own, to make such determinations.") (citations and quotations omitted).

Finally, the ALJ erred by failing specifically to address the alleged side effects of Plaintiff's pain medication.  When a claimant testifies to side effects that "are in fact associated with the claimant's medication(s)," the ALJ may not disregard such testimony unless the ALJ makes "specific findings similar to those required for excess pain testimony."  Varney v. Secretary, 846 F.2d at 585; see also 20 C.F.R. § 404.1529(c)(3)(iv) ("We will consider . . . side effects of any medication you take or have taken to alleviate your pain or other symptoms"); Social Security Ruling 96-7p (mandating consideration of "side effects of any medications the individual takes or has taken to alleviate pain or other symptoms"); Cooley v. Astrue, 2011 WL 2554222, at *5 & n.4 (C.D. Cal. June 27, 2011) (ALJ erred in failing to consider side effect of Norco, which claimant alleged caused her to feel drowsy/tired and to lose focus).  In the present case, the ALJ failed to mention Plaintiff's testimony concerning the allegedly debilitating side effects of her medication.  Thus, the ALJ necessarily failed to state legally sufficient reasons for implicitly finding such testimony not credible.

In attempting to defend the ALJ's adverse credibility finding, Defendant characterizes the ALJ's decision as having found that Plaintiff's medical treatment was "routine and conservative."  See Defendant's Motion, pp. 8-9.  To the extent Defendant's

1  characterization seeks to provide a reason additional to or different

2  from those reasons expressly stated by the ALJ, the characterization

3  must fail.  Defendant cannot properly suggest specifics the ALJ failed

4  to state expressly as reasons for rejecting Plaintiff's credibility.

5  See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court

6  "cannot affirm the decision of an agency on a ground that the agency

7  did not invoke in making its decision"); see also Treichler v.

8  Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014) (for meaningful

9  appellate review, "we require the ALJ to specifically identify the

10 testimony . . . she or he finds not credible . . . and explain what

11 evidence undermines the testimony") (citations and quotations

12 omitted).  In any event, Plaintiff's treatment (which has included

13 narcotic pain medication, epidural injections, and surgery) does not

14 appear to have been "routine or conservative."  See, e.g., Sanchez v.

15 Colvin, 2013 WL 1319667, at *4 (C.D. Cal. March 29, 2013) ("Surgery is

16 not conservative treatment"); Aguilar v. Colvin, 2014 WL 3557308, at

17 *8 (C.D. Cal. July 18, 2014) ("there is evidence in the record that

18 Plaintiff has been prescribed narcotic medications, such as Vicodin.

19 . . .  It would be difficult to fault Plaintiff for overly

20 conservative treatment when he has been prescribed strong narcotic

21 pain medications"); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D.

22 Cal. Sept. 16, 2011) (refusing to categorize as "conservative"

23 treatment including use of narcotic pain medication and epidural

24 injections).

25 ///

26 ///

27 ///

28 ///

**IV.   Remand is Appropriate.**

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett") (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); but see Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (citing Connett for the proposition that "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits") (quotations omitted); see also Brown-Hunter v. Colvin, 2015 WL 4620123, at *7-8 (9th Cir. Aug, 4, 2015) (discussing the requirements for the "extreme remedy" of crediting testimony as true and remanding for an immediate award of benefits); Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014) (remanding for further proceedings where the ALJ failed to state sufficient reasons for deeming a claimant's testimony not credible); Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) (court may "remand for further proceedings, even though all conditions of the credit-as-true rule are satisfied, [when] an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled"); Vasquez v. Astrue, 572 F.3d 586, 600-01 (9th Cir. 2009) (a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon

reversal of an administrative determination, the proper course is to remand for additional agency investigation or explanation, except in rare circumstances); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases").[12]


**CONCLUSION**


For all of the foregoing reasons,[13] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: September 30, 2015.


                              /S/
                         CHARLES F. EICK
                  UNITED STATES MAGISTRATE JUDGE

_____

[12]    There are outstanding issues that must be resolved before a proper disability determination can be made in the present case.  For example, it is not clear whether the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability even if Plaintiff's testimony were fully credited.  See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

[13]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with the directive for the immediate payment of benefits would not be appropriate at this time.  "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled."  See Garrison v. Colvin, 759 F.3d at 1021.